UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------X

DEVONNE LANGSTON,

       *Plaintiff*,                        **MEMORANDUM AND ORDER**

  v.                                  21-CV-00723 (KAM)

COMMISSIONER OF SOCIAL SECURITY,

       *Defendant*.

   ----------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

    Plaintiff Devonne Langston, proceeding *pro se*, appeals a final decision of the Commissioner of Social Security ("the Commissioner") which found that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act") and therefore not eligible for Supplemental Security Income ("SSI"). Presently before the Court is Defendant's Motion for Judgment on the Pleadings (ECF No. 27, Defendant's Motion for Judgment on the Pleadings ("Def. Mem.").)  For the reason stated below, Defendant's motion is **GRANTED**.

**BACKGROUND**

    Plaintiff was born on July 30, 1987, and graduated from high school on May 27, 2006.  (ECF No. 26, Administrative Transcript ("Tr."), at 260, 266.)  Following high school, Plaintiff attended

1

Central Carolina Technical College for three years and attended vocational rehabilitation. (*Id.* at 83, 272, 466.) Plaintiff reported working in food preparation from June to August 2010, and as a bell ringer for the Salvation Army in November 2014. (*Id.* at 272-73.) On October 19, 2017, Plaintiff filed an application for supplemental security income, alleging a disability beginning on April 8, 2016, due to "asperger's disorder, anxiety, autism spectrum disorder, depression, low self-esteem, and passive behavior." (*Id.* at 9, 271.) Plaintiff's claim was denied initially on March 27, 2018. (*Id.* at 129.)

On April 13, 2018, Plaintiff requested a hearing before an Administrative Law Judge. (*Id.* at 135.) Plaintiff initially appeared for a hearing and requested a postponement on October 7, 2019, in order to obtain counsel. (*Id.* at 81, 189.) Plaintiff subsequently stated that he was willing to proceed unrepresented, and Administrative Law Judge Robert R. Schriver (the "ALJ") held a hearing on January 24, 2020, during which Plaintiff testified. (*Id.* at 79-81.) Mary Vasishth, a vocational expert, also appeared at the hearing and testified. (*Id.* at 87.)

In a decision dated March 4, 2020, the ALJ determined that Plaintiff was not disabled under the Act because he retained the residual functional capacity ("RFC") to perform a limited range of sedentary work as defined in 20 CFR 416.967(a), and, considering "claimant's age, education, work experience, and [RFC], there are

jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* at 14, 20-21.)  In making his RFC determination, the ALJ weighed the medical opinions of Drs. Shapiro, Trimba, Papapetrou, Georgiou, Feldman, and Harris. (Id. at 19.)  The ALJ found the opinion of Dr. Shapiro "persuasive," noting that it was "supported by a review of the record as it stood at the time, as well as a detailed rationale, and is consistent with the record as a whole, and in particular the claimant's activities of daily living." (*Id.*)  The ALJ found the opinions of both Drs. Trimba and Papapetrou slightly less persuasive due to issues with consistency and supportability. (*Id.*)  Finally, the ALJ did not find the opinions of Drs. Georgiou or Harris persuasive, noting that each was "vague," and similarly found the opinion of Dr. Feldman unpersuasive as it was "inconsistent with the record as a whole, including the opinion of Dr. Trimba." (*Id.*)

On August 10, 2020, Plaintiff requested reconsideration of his case. (*Id.* at 211.)  On December 7, 2020, the Appeals Council denied review of the ALJ's decision, rendering it the final decision of the Commissioner. (*Id.* at 1.)  On February 9, 2021, Plaintiff filed the instant action seeking judicial review of the Commissioner's decision. (ECF No. 1, Complaint ("Compl.").)  On January 21, 2022, the Commissioner filed a notice of motion and memorandum of law in support of a motion for judgment on the

pleadings. (ECF No. 27.)  Plaintiff failed to respond to the Commissioner's motion or provide his consent to the Commissioner's proposed joint stipulation of relevant facts, despite being granted an extension by the Court to do so.  (*See* Docket Order dated December 30, 2021.)  Though the Commissioner's motion is unopposed, the Court will review the record to determine if substantial evidence in the record supports the decision that Plaintiff is not disabled, and whether the Commissioner is entitled to judgment as a matter of law.

## **LEGAL STANDARD**

To receive disability benefits, a claimant must be "disabled" within the meaning of the Act.  *See* 42 U.S.C. §§ 423(a), (d).  A claimant qualifies as disabled when he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *Id.* § 423(d)(1)(A).  The impairment must be of "such severity" that the claimant is unable to do his previous work or engage in any other kind of substantial gainful work.  *Id.* § 423(d)(2)(A).  "The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability

. . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2010) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999)) (alterations in original).

An unsuccessful claimant for disability benefits under the Act may bring an action in federal court seeking judicial review of the Commissioner's denial of his or her benefits.  42 U.S.C. §§ 405(g), 1383(c)(3).   "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error."  *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks and citation omitted); *see also* 42 U.S.C. § 405(g).  "Substantial evidence is more than a mere scintilla," and must be relevant evidence that a "reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks omitted).

If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld.  42 U.S.C. § 405(g).  Inquiry into legal error requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*,

569 F.3d 108, 112 (2d Cir. 2009) (citation omitted).  The reviewing court does not have the authority to conduct a *de novo* review and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result.  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether the claimant's condition meets the Act's definition of disability.  *See* 20 C.F.R. § 404.1520.  This process can be summarized as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (internal quotation marks and citation omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

During this five-step process, the Commissioner must consider whether the combined effect of any such impairment would be of sufficient severity to establish eligibility for Social Security benefits.  20 C.F.R. § 404.1523(c).  Further, if the Commissioner does find a combination of impairments, the combined impact of the impairments, including those that are not severe (as defined by the regulations), will be considered in the determination

process.  20 C.F.R. § 416.945(a)(2).  At steps one through four of
the sequential five-step framework, the claimant bears the
"general burden of proving . . . disability." *Burgess*, 537 F.3d
at 128.  At step five, the burden shifts from the claimant to the
Commissioner, requiring that the Commissioner show that, in light
of the claimant's RFC, age, education, and work experience, the
claimant is "able to engage in gainful employment within the
national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310
(E.D.N.Y. 1997).

Federal regulations explicitly authorize a court, upon
reviewing decisions of the Commissioner, to remand for further
proceedings when appropriate.  "The court shall have power to
enter, upon the pleadings and transcript of the record, a judgment
affirming, modifying, or reversing the decision of the
Commissioner of Social Security, with or without remanding the
cause for a rehearing."  42 U.S.C. § 405(g).  Remand is warranted
where "there are gaps in the administrative record or the ALJ has
applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d
72, 82-83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 39
(2d Cir. 1996)).  Remand is particularly appropriate where further
findings or explanation will clarify the rationale for the ALJ's
decision. *Pratts*, 94 F.3d at 39.  If the record before the court
provides "persuasive proof of disability and a remand for further
evidentiary proceedings would serve no purpose," however, the

court may reverse and remand solely for the calculation and payment of benefits. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *see also Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013).

Where, as here, a motion for judgment on the pleadings is unopposed, the Court cannot grant the unopposed motion based solely upon the opposing party's failure to respond. *Acheampong v. Comm'r of Soc. Sec.*, 564 F. Supp. 3d 261, 265 (E.D.N.Y. 2021). Instead, the Court "must review the record and determine whether the moving party has established that the undisputed facts entitle it to judgment as a matter of law." *Id.* (internal citations omitted).

## DISCUSSION

### I.   The ALJ's Disability Determination

Using the five-step sequential process described above, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since October 19, 2017, the application date. (Tr. at 11.) At step two, the ALJ found that Plaintiff suffered from the following severe impairments: intellectual disorder, unspecified anxiety disorder, autism spectrum disorder, ankle/foot deformity, asthma, a history of gout, and obesity. (*Id.*) The ALJ found that the Plaintiff's impairments, "significantly limit [his] ability to perform basic work activities." (*Id.*)

### a. The ALJ's Findings Regarding Plaintiff's Impairment

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404 Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926). (Tr. at 11.)  First, the ALJ determined that Plaintiff did not meet Listing 1.02 (Musculoskeletal Disorders) because there was no evidence of Plaintiff's inability to ambulate. (*Id.* at 12.)  Second, the ALJ determined that Plaintiff did not meet Listing 3.03 (Asthma) because the record did not contain evidence of FEV1 values or the required hospitalizations set forth in the listing. (*Id.*)  Third, the ALJ, although having considered obesity under SSR 19-2p, determined that there was no evidence that Plaintiff's obesity met or medically equaled a listing. (*Id.*)

Next, the ALJ considered Plaintiff's mental impairments and determined that the impairments, singly and in combination, did not meet or medically equal the criteria of listings 12.05 (Intellectual Disorder), 12.06 (Anxiety and Obsessive-Compulsive Disorders), and 12.10 (Autism Spectrum Disorder). (*Id.* at 12.) In making that finding, the ALJ considered whether Plaintiff met the "paragraph B" criteria as required by listing 12.05. (*Id.*)  To satisfy paragraph B criteria, a claimant's mental impairments must result in at least one extreme or two marked limitations in the following areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others;

(3) concentrating, persisting, or maintaining pace; (4) adapting or managing oneself. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

The ALJ determined that Plaintiff had a mild limitation in understanding, remembering, or applying information as Plaintiff did not report any difficulties with self-care activities, but a mild impairment in memory was noted upon consultative examination. (Tr. at 12.)  The ALJ determined that Plaintiff had a moderate limitation in interacting with others, citing Plaintiff's socialization with family members and ability to take public transportation independently while noting Plaintiff's reported lack of friends, as well. (*Id.*)  The ALJ considered Plaintiff to have a mild limitation in concentrating, persisting, or maintaining pace based on Plaintiff's statement that "he is able to finish what he starts, [though he] noted some issues with focus and memory." (*Id.*)  Lastly, the ALJ determined that Plaintiff had a moderate limitation for adapting or managing oneself, based on his testimony that he gets overwhelmed easily. (*Id.*)  Accordingly, the ALJ determined that the "paragraph B" criteria were not satisfied because Plaintiff's mental impairments did not cause at least two "marked limitations" or one "extreme" limitation. (*Id.*)  The ALJ also determined that the "paragraph C" criteria of listing 12.06 (Anxiety and Obsessive-Compulsive Disorders) was not satisfied. (*Id.*)  To satisfy the "paragraph C" criteria, a claimant's mental disorder must be "serious and persistent" with

a medically documented history of the existence of the disorder over a period of at least two years.  20 C.F.R. § Pt. 404, Subpt. P, App. 1

Continuing with his analysis of whether Plaintiff met the requirements of listing 12.05, the ALJ then considered the three elements that characterize intellectual disorder under the listing's "paragraph A criteria": significantly subaverage general intellectual function; significant deficits in current adaptive functioning; and that the disorder manifested before age 22.  (Tr. at 13.)  The ALJ determined that Plaintiff did not meet the requirements because Plaintiff was "independent in his personal needs."  (*Id.*)  Next, the ALJ determined that Plaintiff did not meet the "paragraph B" criteria under Listing 12.05.  The ALJ found that the intelligence testing did not reflect the requisite scores and Plaintiff did not meet the "paragraph B" criteria, as discussed earlier in the ALJ's report.  (*Id.* at 14.)  As a result, the ALJ concluded that Plaintiff failed to meet Listing 12.05's "paragraph A" or "paragraph B" criteria.  (*Id.* at 13-14.)

### b. Plaintiff's Residual Functional Capacity ("RFC")

Next, the ALJ found that Plaintiff had the RFC to perform sedentary work with the following limitations: Plaintiff "can perform simple tasks only, make only simple work-related decisions, and have only occasional interaction with supervisors, coworkers, and the general public."  (*Id.* at 14.)

In determining that Plaintiff had the RFC to perform sedentary work with the aforementioned conditions, the ALJ relied on Plaintiff's hearing testimony and medical records that included, among others, hospital records and treatment records from a variety of healthcare providers. (*Id.* at 14-18.)  The ALJ found that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 15.)

With regards to Plaintiff's physical impairments, the ALJ determined that Plaintiff's physical impairments did not preclude him from performing all work activity. (*Id.* at 18.)  The ALJ noted, "[a]lthough the record contains a history of foot complaints, progress notes do not indicate more than moderate limitations." (*Id.*)  The ALJ also determined that Plaintiff's claims of "disabling symptoms" were "inconsistent with the record," noting that Plaintiff had attended college and vocational training programs, has no problem with self-care or the activities of daily living, spends time with others, and "goes to shopping places, bowling alleys, and church commonly." (*Id.*)  Furthermore, the ALJ found that Plaintiff, despite indicating that he has problems paying attention, was "able to finish what he starts." (*Id.*)  Overall, the ALJ concluded that "[Plaintiff's] conditions

are generally managed, with no indication of more than moderate limitations" and "the record does not contain support in objective or clinical findings for an inability to perform all work." (*Id.*)

The ALJ gave the most weight in his analysis to S. Shapiro, Ph.D. (*Id.* at 19.) The ALJ noted that Dr. Shapiro's opinion was supported by the record and a detailed rationale and was also consistent with the record. (*Id.*) The ALJ found the opinion of Lyudmila Trimba, MD, a consultative examiner, mostly persuasive. (*Id.* at 19). The ALJ noted that Dr. Trimba's opinion was supported by a detailed report regarding a physical examination and was mostly consistent with the record. (*Id.*) The ALJ noted that a sedentary residual functional capacity would be most appropriate for the Plaintiff given his foot and ankle ailments. (*Id.*) The ALJ found the opinion of Gus Papapetrou, Ph.D., somewhat persuasive, as it was vague, but was nonetheless supported by an in-person examination and was consistent with the record. (*Id.*) Dr. Papapetrou's opinion supported the conclusion that Plaintiff was "best suited for indoor, sedentary work with limited social interaction." (*Id.*)

The ALJ afforded little weight to Toula Georgiou, Psy.D. (*Id.*) The ALJ noted that Dr. Georgiou's opinion was too vague and therefore could not be used to determine Plaintiff's mental limitations. (*Id.*) The ALJ also afforded little weight to the opinion of Dr. Feldman, which did not include a detailed report

and was inconsistent with the record as a whole, including Dr. Trimba's opinion. (*Id.*)   The ALJ also afforded little weight to the opinion of Dr. Jean Louise Harris, which he found vague, unsupported, and inconsistent with the overall record. (*Id.*)

### c. The ALJ's Disability Conclusion

At step four, the ALJ concluded that Plaintiff had no past relevant work, and that transferability of job skills was accordingly not an issue.  (*Id.* at 20.)

At step five of the evaluation process, the ALJ found that, based on Plaintiff's residual functional capacity, age, education, and work experience, and from the vocational expert's testimony, that jobs existed in the national economy that Plaintiff could perform. (*Id.*)  At the January 24, 2020, hearing, the vocational expert testified that Plaintiff would be able to perform the requirements of representative occupations such as Addressing Clerk, Document Preparer, and Final Assembler. (*Id.* at 20-21.) The ALJ subsequently asked Plaintiff: "the sorts of jobs that [the vocational expert] was describing where you kind of sit in the desk and either work with paper or work with objects . . . [d]o you think you would be able to do that kind of job?" (*Id.* at 91.) The Plaintiff replied "Yes." (*Id.*)  Upon further questioning from the ALJ regarding "anything that would keep you from doing that kind of job," the Plaintiff explained that he "get[s] overwhelmed easily."  Ultimately, the ALJ concluded that Plaintiff was not

disabled within the meaning of the Social Security Act because there existed jobs in the national economy that Plaintiff could perform even given his limited RFC. (*Id.* at 21.)

## II.  The ALJ Sufficiently Developed the Record

"Whether the ALJ has met his duty to develop the record is a threshold question that must be determined before the Court reviews whether the ALJ's final decision is supported by substantial evidence." *Miranda v. Comm'r of Soc. Sec.*, No. 22-cv-4226 (PKC), 2023 WL 6385727, at *6 (E.D.N.Y. Sept. 29, 2023) (internal quotation marks and citation omitted).  Even when not raised by the claimant, the Court "must independently consider the question of whether the ALJ failed to satisfy his duty to develop the Record." *Sanchez v. Saul*, No. 18-cv-12102 (PGG) (DF), 2020 WL 2951884, at *23 (S.D.N.Y. Jan. 13, 2020), *report and recommendation adopted*, 2020 WL 1330215 (S.D.N.Y. Mar. 23, 2020).  "[B]ecause a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citation omitted).  "Legal errors regarding the duty to develop the record warrant remand." *Wilson v. Colvin*, 107 F. Supp. 3d 387, 407 (S.D.N.Y. 2015) (collecting cases).

Plaintiff argues in his complaint that the ALJ "failed to develop the [administrative] record" without further elaboration. (Compl. at 3.)  Courts have concluded, in other circumstances,

that an ALJ should have sought additional information to fill a record consisting of "sparse" and "wholly conclusory" notes of a single treating physician. *Rosa v. Callahan*, 168 F.3d 72, 79-80 (2d Cir. 1999). However, where an ALJ has a "complete record before [him] consisting of medical opinions, treatment notes, and test results . . . the ALJ did not err in failing to supplement the administrative record." *Schillo v. Kijakazi*, 31 F.4th 64, 76 (2d Cir. 2022).

As discussed *supra*, the ALJ considered numerous psychiatric evaluations, medical records, and other evidence in making his conclusions. (Tr. at 14-19.) The ALJ specifically reviewed and relied on the opinions of several medical professionals in crafting an RFC, including Dr. Trimba regarding Plaintiff's "foot/ankle ailments" and Dr. Papapetrou regarding Plaintiff's suitability for "sedentary work with limited social interaction." (*Id.* at 19.) As a result, in making his determination, the ALJ did not issue a "patchwork" RFC that "lack[ed] a clear basis in the record's medical evidence." *Lao v. Comm'r of Soc. Sec.*, No. 18-cv-07462 (FB), 2020 WL 4194210, at *3 (E.D.N.Y. July 21, 2020).

Plaintiff has pointed to no gaps in the administrative record. "Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168

F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks and citation omitted).  Accordingly, the Court finds that the ALJ sufficiently developed the record in the instant case.

### III. The ALJ's Weighing of the Medical Source Opinions

#### a. New Regulations Governing Medical Opinion Evidence

In 2017, new regulations were issued that changed the standard for evaluating medical opinion evidence regarding claims filed on or after March 27, 2017. *See* 20 C.F.R. § 416.920c.  Because Plaintiff filed his claim on October 19, 2017, the new regulations apply.

Under the new regulations, the Commissioner no longer "defer[s]" or gives "controlling weight" to a claimant's treating medical sources. *Id.* § 416.920c(a).  Instead, when evaluating the persuasiveness of medical opinions, the Commissioner considers the following five factors: (1) supportability; (2) consistency; (3) the relationship of the medical source with the claimant (taking into account the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the relationship is an examining relationship); (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing [the] medical source has familiarity with the other evidence in the claim or an understanding of [the SSA] disability program's policies and

evidentiary requirements." *Id.* § 416.920c(c).  In each case, the ALJ must explain how he or she considered the factors of supportability and consistency, the two most important factors for determining persuasiveness.  *Id.* §§ 416.920c(a), (b)(2).

### b. The ALJ's Assessment of Medical Opinion Evidence

Plaintiff contends that "the ALJ's decision was not supported by substantial evidence."  (Compl. at 3.)  Although Plaintiff does not elaborate further, this Court, in light of his *pro se* status, will liberally construe his argument to claim that the ALJ improperly weighed the medical opinion evidence.  *See Rose v. Comm'r of Soc. Sec.*, 202 F. Supp. 3d 231, 239 (E.D.N.Y. 2016) ("The court will liberally construe [*pro se*] Plaintiff's pleadings to raise the strongest arguments that they suggest.")

Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion.  20 C.F.R. § 404.1520c(a).  With respect to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  *Id.* § 404.1520c(c)(1).  As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the

evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2). The ALJ must explain how he or she considered the "supportability" and "consistency" factors for a medical source's opinion. *Id.* § 404.1520c(b)(2). The ALJ may, but is not required to, explain how he or she considered the remaining factors. *Id.*

Here, after reviewing the ALJ's decision and the medical evidence in the record, the Court concludes that the ALJ properly weighed the medical opinions and that, as a result, his RFC assessment was based on substantial evidence. As set forth below, the ALJ evaluated the persuasiveness of each medical source and explained how he determined the supportability and consistency of each opinion, as required by 20 C.F.R. § 404.1520c, even if he did not use the words "supportability" and "consistency." *See Raymond M. v. Comm'r of Soc. Sec.*, No. 19-CV-1313 (ATB), 2021 WL 706645, at *8 (N.D.N.Y. Feb. 22, 2021) (citation omitted) ("At their most basic, the amended regulations require that the ALJ explain h[is] findings regarding the supportability and consistency for each of the medical opinions, 'pointing to specific evidence in the record supporting those findings.'").

First, the ALJ properly weighed the March 2018 opinion of Dr. Shapiro, finding it "persuasive." (Tr. at 19.) Dr. Shapiro

conducted a review of Plaintiff's medical records as they stood at March 2018, including several previous psychological evaluations, and opined that Plaintiff "appears capable of performing simple tasks on a sustained basis." (*Id.* at 122.) Dr. Shapiro noted that the January 22, 2018, evaluation of Plaintiff by Dr. Toula Georgiou was more restrictive than his findings, but explained that Dr. Georgiou's opinion "appears to rely on the assessment of limitations resulting from an impairment for which the source has not treated or examined the individual." (*Id.* at 126.) Regarding supportability, the ALJ found that Dr. Shapiro's opinion was supported by "the record as it stood at the time, as well as a detailed rationale." (*Id.* at 19.) Regarding consistency, the ALJ found Dr. Shapiro's opinion to be "consistent with the record as a whole, and in particular [Plaintiff's] activities of daily living." (*Id.*)

Second, the ALJ properly weighed the January 2018 opinion of Dr. Lyudmila Trimble, the consultative examiner, deeming it "mostly persuasive." (*Id.* at 19.) Dr. Trimble opined that Plaintiff's history of gout and ankle/foot pain resulted in a "mild limitation" to Plaintiff's ability to "stand and walk for a prolonged time" and "push, pull, or carry heavy objects." (*Id.* at 431.) Dr. Trimble assessed "no limitation" in Plaintiff's "ability to sit for a prolonged time." (*Id.*) Regarding supportability, the ALJ explained that Dr. Trimble's opinion was supported by "a

detailed report containing her clinical findings on physical examination." (*Id.* at 19.) As to consistency, the ALJ found the opinion to be "mostly consistent with the record as a whole, although [the ALJ found] that a sedentary residual functional capacity would be most appropriate for [Plaintiff], given his foot/ankle ailments." (*Id.*) Accordingly, given the ALJ found the medical opinion "mostly consistent" with the record, he found it "mostly persuasive." (*Id.*)

Third, the ALJ properly weighed the February 2018 opinion of psychologist Dr. Gus Papapetrou, finding it "somewhat persuasive." (*Id.*) Dr. Papapetrou conducted an examination to assess Plaintiff's "current intellectual, emotional, academic, and vocational functioning and skills" utilizing a behavioral observation and tests of intellectual functioning. (*Id.* at 433.) Dr. Papapetrou opined that Plaintiff "is able to work in an office setting doing 'bookkeeping' or 'accounting' work or some computer-related work." (*Id.* at 435.) Dr. Papapetrou also stated that Plaintiff needed "more socialization experiences with others in general" which should be "addressed by his vocational counselor." (*Id.*) The ALJ found Dr. Papapetrou's opinion to be "supported by an in-person examination and a detailed rationale" despite being "somewhat vague." (*Id.* at 19.) Regarding consistency, the ALJ found that Dr. Papepetrou's opinion was "consistent with the record

as a whole, which supports that the [Plaintiff] is best suited for indoor, sedentary work with limited social interaction." (*Id.*)

Fourth, the ALJ did not find the January 2018 opinion of psychologist Dr. Toula Georgiou to be persuasive. (*Id.*) Dr. Georgiou conducted a consultative examination and opined that Plaintiff "may have difficulties maintaining a regular work schedule, working at a consistent pace, regulating his emotions, and interacting with others." (*Id.* at 426.) Regarding both supportability and consistency, the ALJ found that Dr. Georgiou's opinion was "too vague to be of any use in determining the extent of the claimant's mental limitations." (*Id.* at 19.)

The Court finds that the ALJ's explanation reflects a proper consideration of the evidence. Despite performing an interview of Plaintiff and a "mental status examination," Dr. Georgiou did not offer any clarity or specifics regarding what she meant when she opined generally that Plaintiff "may have difficulties" in some work settings. (*Id.* at 426.) As compared to the opinion of Dr. Shapiro, which offered specific details on Plaintiff's ability to understand, concentrate, interact with others, and adapt to change, (*Id.* at 124-26), Dr. Georgiou's generalized statement would be of little use to an ALJ in determining "what [Plaintiff] can still do despite [his] impairment(s)," 20 C.F.R. § 404.1513(a)(2). As such, and given the ALJ relied upon three other more persuasive, reliable, and consistent medical opinions in

crafting Plaintiff's RFC, the ALJ did not commit reversible error by failing to credit Dr. Georgiou's opinion.

Fifth, the ALJ did not find the March 2018 opinion of consultative examiner Dr. Feldman persuasive. (Tr. at 19.) Dr. Feldman conducted an extremely limited review of the record and concluded simply that "[Plaintiff's] physical conditions are non-severe." (*Id.* at 121.) While Dr. Feldman summarized the medical evidence in the record as of the time of his review, he does not appear to have offered any rationale or explanation as to how the evidence supported his conclusion. (*Id.*) Regarding supportability, the ALJ found that "Dr. Feldman's opinion is based on a review of the record as it stood at the time, but not a detailed report or rationale." (*Id.* at 19.) Regarding consistency, the ALJ found that Dr. Feldman's opinion was "inconsistent with the record as a whole, including the opinion of Dr. Trimba." (*Id.*) Accordingly, because the ALJ found that Dr. Feldman's both unsupported and inconsistent with other evidence, including Dr. Trimba's opinion which suggested Plaintiff had certain physical limitations for work, the ALJ properly found Dr. Feldman's opinion not persuasive. (*Id.*)

Sixth, the ALJ found the November 2018 opinion of Dr. Jean Louise Harris not to be persuasive. (*Id.*) Dr. Harris, following an examination of Plaintiff and a record review, opined that Plaintiff was temporarily unable to work for "60 days" due to his

"[a]nxiety state, unspecified [p]ervasive developmental disorder[,
and] [d]epressive disorder." (*Id.* at 508.)   Dr. Harris continued
by recommending that Plaintiff "[e]stablish routine mental health
care" and "[e]ngage in psychotherapy." (*Id.*)   Dr. Harris concluded
by noting that "[b]ased on my interview, examination, and review
of available documentation, [Plaintiff] may potentially be
employed in some capacity afterwards." (*Id.* at 509.)   Regarding
supportability, the ALJ found that Dr. Harris's opinion was "vague
[and] unsupported." (*Id.* at 19.)   Dr. Harris did not offer any
rationale or explanation for her 60-day recommendation based on
her examination or her review of the record, and also did not offer
any opinion regarding what Plaintiff could still do despite his
impairments after the 60-day period had elapsed. (*Id.* at 506-09.)
Regarding consistency, the ALJ found that Dr. Harris's opinion was
"inconsistent with the overall record." (*Id.* at 19.)   Although
other medical opinions offered varying views on the type of work
to which Plaintiff was suited, no opinion or medical evidence
outside of Dr. Harris's opinion stated that Plaintiff was unable
to conduct any type of work for a specific period of time. (*See
Id.* at 18 ("the record does not contain support in objective or
clinical findings for an inability to perform all work").)
Accordingly, because the ALJ found that Dr. Harris's opinion both
unsupported and inconsistent with other evidence, he deemed it not
persuasive for purposes of his analysis. (*Id.* at 19.)

In conclusion, the Court finds that the ALJ properly considered each of the medical opinions before him, and to the extent a conflict existed between any of the medical opinions, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would *have to conclude otherwise*." *Morris v. Berryhill*, 721 F. App'x 25, 29 (2d Cir. 2018) (internal citations and quotations omitted); *see also Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence). Plaintiff has not sufficiently shown that the ALJ improperly weighed the medical opinions, or that his resolution of any potential conflict in the evidence was unreasonable or unsupported by the evidence in the record. Accordingly, the ALJ did not commit reversible error by relying on the medical opinion of Drs. Shapiro, Trimba, and Papapetrou in crafting his RFC.

### IV. Substantial Evidence Supports the ALJ's Findings

The Court finds that the ALJ's RFC determination was supported by substantial evidence. "Substantial evidence" is relevant evidence which a "reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004). "The substantial evidence standard is 'not high.'" *Rucker v. Kijakazi*, 48 F.4th 86, 91 (2d Cir. 2022) (citation omitted). "Substantial" evidence means only "more than a mere

scintilla." *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (citation omitted).

A reasonable factfinder could have arrived at the same RFC conclusion as did the ALJ here.  As discussed further *supra*, the ALJ properly weighed and relied upon three medical opinions in crafting his RFC, and discussed the reasons why he did not find the remaining three medical opinions to be persuasive.  (Tr. at 19.)  The ALJ also noted that he "carefully considered [Plaintiff's] statements and hearing testimony concerning his symptoms" but explained that his "review of the record, considering treatment notes and the longitudinal record, does not establish that the claimant's impairments preclude him from performing all work activity." (*Id.* at 18.)

Regarding Plaintiff's physical limitations, the ALJ noted that though "the record confirms a history of foot complaints, progress notes do not indicate more than moderate limitations." (*Id.*)  Regarding Plaintiff's mental impairments, the ALJ noted that "the record does not indicate conditions so severe as to preclude all work activity." (*Id.*)  Specifically, the ALJ noted that the Plaintiff had "reported holding several jobs for short periods of time" and remained "able to carry out his activities of daily living, [testifying] that he is able to walk about, and travel independently by public transportation." (*Id.*) Continuing, the ALJ noted that Plaintiff's "reports of totally

disabling subjective symptoms are not supported by the overall record." (*Id.*)  The ALJ noted that Plaintiff had "attended college," had "participated in a vocational training program," was "independent in self-care activities and activities of daily living," performed "household chores," was able to go "out often on foot[] and shop[] in stores," was able to "spend[] time with others," and was able to "finish what he starts." (*Id.*)  An ALJ may properly consider such evidence in finding a Plaintiff not disabled. *See Barrere v. Saul*, 857 F. App'x 22, 24 (2d Cir. 2021) (citing the ability to travel alone and get to appointments on time, as well as "only mild difficulties completing 'activities in daily living,'" as part of the record's "robust" support of the finding that the claimant was not disabled).

After reviewing the evidence, the ALJ found that Plaintiff's "conditions are generally managed, with no indication of more than moderate limitations." (Tr. at 18.)  The ALJ's conclusions regarding moderate limitations were consistent with Dr. Shapiro's medical opinion, which found no more than "moderate" limitations to any category in his Mental Residual Functional Capacity Assessment. (*Id.* at 124-26.)  In light of the limitations noted, the ALJ noted in his RFC that Plaintiff could "perform simple tasks only, make only simple work-related decisions, and have only occasional interaction with supervisors, coworkers, and the general public." (*Id.* at 14.)

Even if there were evidence in the record supporting a more restrictive RFC, the "relevant question" is whether "substantial evidence supports the ALJ's decision." *See Wider v. Colvin*, 245 F. Supp. 3d 381, 386 (E.D.N.Y. 2017) (quoting *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013)). Given the record before the ALJ, including treatment notes, medical opinions, and Plaintiff's own testimony, the Court concludes that substantial evidence supported the ALJ's finding regarding Plaintiff's RFC.

Finally, after finding that Plaintiff had no relevant work experience at step four of his analysis, the ALJ relied on a vocational expert to find that Plaintiff was capable of work existing in significant numbers in the national economy. (Tr. at 20-21.)  During the hearing, in response to the ALJ's questioning setting out Plaintiff's vocational profile and RFC, the vocational expert identified that the hypothetical individual could perform the occupations of addressing clerk, document specialist or preparer, and final assembler of optical goods. (Tr. 90-91).  As the Court has concluded that the ALJ's RFC determination was based on substantial evidence, the ALJ did not err relying on the testimony of a vocational expert to find that Plaintiff was capable work existing in significant numbers in the national economy, and therefore not disabled under the Social Security regulations. *See McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) ("An ALJ may rely on a vocational expert's testimony regarding a hypothetical

as long as there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion and accurately reflect the limitations and capabilities of the claimant involved.").

**CONCLUSION**

For the foregoing reasons, Defendant's motion for judgment on the pleadings is **GRANTED**.  The Clerk of Court is respectfully directed to enter judgment in favor of the Commissioner, send a copy of this Memorandum and Order and the judgment to Plaintiff, note service on the docket, and close this case.


**SO ORDERED**

Dated:     January 11, 2024
           Brooklyn, New York

_____
**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York